

**ORDERED in the Southern District of Florida on December 21, 2023.**

**Robert A. Mark, Judge**
**United States Bankruptcy Court**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division
www.flsb.uscourts.gov

In re:

                                                   Case No. 22-19932-RAM

Burke Brands LLC                                   Chapter 11
dba Don Pablo Coffee,

               Debtor.

_____/

### ORDER CONFIRMING DEBTOR'S SUBCHAPTER V
### <u>PLAN OF REORGANIZATION</u>

This matter came before the Court on December 11, 2023 at 10:00 a.m. (the "Hearing")

to consider confirmation of the Debtor's *Third Amended Plan of Reorganization* (the "Plan")

[ECF 348] filed on December 9, 2023 by the Debtor, Burke Brands LLC (the "Debtor" or "Plan

Proponent"). In connection with the confirmation of the Plan, the Court has considered the

evidence presented as well as the record of this case, including: (i) the *Second Amended*

*Certificate of Subchapter V Debtor on Acceptance of Plan, Report on Amount to be Deposited,*

*Certificate of Amount Deposited and Payment of Fees* (Doc. 354), (ii) the *Declaration of Darron Burke in Support of Plan* (Doc. 325), (iii) the Objection to Confirmation of Proposed Second Amended Plan filed by U.S. Century Bank [ECF 347], (iv) the Ballots Rejecting the Second Amended Plan [ECF 344 and 345] filed by U.S. Century Bank, and (v) the representations and argument made on the record at the Hearing by Debtor's counsel, attorney for the United States Trustee, and the Subchapter V Trustee, and noting that no parties wished to cross-examine the Debtor. Having considered that the Plan has met the requirements of 11 U.S.C. § 1191(b), and all objections to confirmation of the Plan have been overruled, resolved, or withdrawn, and after proper notice and a hearing, the Court finds and concludes as follows:

## FINDINGS OF FACTS & CONCLUSIONS OF LAW

A.    **Jurisdiction**. The Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334, the United States District Court's general order of reference, and other various applicable provisions of the Bankruptcy Code[1] and the Federal Rules of Bankruptcy Procedure ("FRBP").

B.    **Venue**. Venue is proper before this Court under 28 U.S.C. §§ 1408 and 1409.

C.    **Notice**. Due, adequate, and sufficient notice of the Plan and the *Order (I) Setting Hearing on Confirmation of Subchapter V Amended Plan; (II) Setting Hearing on Fee Applications; (III) Setting Various Deadlines; and (IV) Describing Debtor's Plan Obligations* [ECF 264] were served upon all creditors, interest holders, and parties requesting notice. Accordingly, the method of service and solicitation of acceptance of the Plan, notice of the hearing to consider confirmation of the Plan, and notices of all other deadlines or requirements relating thereto (collectively, the "Confirmation Deadlines") were in compliance with the FRBP, and were adequate and reasonable under the circumstances of this case, and

---

[1] The term "Bankruptcy Code" refers to the applicable section(s) of 11 U.S.C. § 101, *et. seq.* unless otherwise indicated.

no further or additional notice of the confirmation hearing or the confirmation deadlines was necessary or required.

D. **Objections to Confirmation**. Objections to confirmation of the Plan were filed by Creditor LEAF Capital Funding, LLC ("LEAF") (the "LEAF Objection") [ECF 294], the Subchapter V Trustee (the "Trustee Objection") [ECF 329], and Creditor U.S. Century Bank ("USCB") (the "USCB Objection") [ECF 346]. Subsequently, by means of Plan modifications set forth in the Plan and herein, and by agreement of the parties, the LEAF Objection was withdrawn [ECF 333] and the Trustee Objection was resolved. The Court, having heard the presentation of Debtor's counsel and counsel for USCB, overruled the USCB Objection.

E. **Proper Classification of Claims – 11 U.S.C. §§ 1122 and 1123**. The Plan adequately and properly identifies and classifies all claims. Pursuant to 11 U.S.C. § 1122(a), the claims placed in each class are substantially similar to other claims in each such class. Specifically, the Plan provided for the following eleven classes of claims: (i) Allowed Secured Claim of USCB relating to an SBA 7A Loan; (ii) Allowed Secured Claim of USCB relating to an SBA 504 Loan; (iii) Allowed Secured Claim of LEAF relating to a Business Funding Agreement; (iv) Allowed Secured Claim of LEAF relating to a Kilo Roaster; (v) Allowed Secured Claim of Channel Capital Partners ("Channel"); (vi) Allowed Secured Claim of Rapid Finance pursuant to an MCA; (vii) Allowed Secured Claim of Cloudfund, LLC ("Cloudfund") pursuant to an MCA; (viii) Allowed Secured Claim of Velocity Capital Group, LLC ("Velocity") pursuant to an MCA; (ix) Allowed Secured Claim of Winn Capital, LLC ("Winn") pursuant to an MCA; (x) Allowed General Unsecured Claims; i.e., all non-priority unsecured claims allowed under 11 U.S.C. § 502; and (xi) Allowed Equity Interests. Pursuant to 11 U.S.C. § 1123(a)(1), valid legal and business reasons exist for the various classes of claims created

under the Plan and such classification does not unfairly discriminate among holders of claims. The classification of claims in the Plan is reasonable.

F.    **Specified Unimpaired Classes – 11 U.S.C. § 1123(a)(2)**. The Plan specifies all classes or claims or interests that are not impaired under the plan. Specifically, Classes 2 and 11 are unimpaired, and therefore the holders of the Class 2 claim and Class 11 interests are conclusively presumed to have accepted the Plan.

G.    **Specified Treatment of Impaired Classes – 11 U.S.C. § 1123(a)(3)**. The Plan specifies the treatment of all classes of claims or interests that are impaired under the Plan. Specifically, Classes 1, 3, 4, 5, 6, 7, 8, 9, and 10 are impaired, and thus such Claimholders are entitled to vote to accept or reject the Plan. Class 1 Claimholder, USCB, has rejected the Plan[2]. Class 3, 4, and 10 Claimholder, LEAF, has accepted the Plan. Class 5 and 10 Claimholder, Channel Partners, has accepted the Plan. Class 6 and 10 Claimholder, Rapid Finance, has accepted the Plan. Class 7 and 10 Claimholder, Cloudfund, has accepted the Plan. Class 8 and 10 Claimholder, Velocity, has accepted the Plan. Class 9 and 10 Claimholder, Winn, has accepted the Plan. Class 10 Claimholder, Ouiby Inc., has accepted the Plan. Class 10 Claimholder, American Express National Bank, has rejected the Plan. In Class 10, as the total claims of the accepting creditors ($1,129,868.05) are more than two-thirds (specifically, 67.73%) in amount of the Allowed Class 10 claims that have submitted ballots, and as the accepting ballots are more than half in number of the ballots submitted (specifically, 87.5%), Class 10 has accepted the Plan.

H.    **No Discrimination – 11 U.S.C. § 1123(a)(4)**. The Plan provides for the same treatment of claims or interests in each respective class, unless the holder of a particular claim or interest has agreed to a less favorable treatment of such claim or interest.

---

[2] USCB also filed a rejecting ballot for its Class 2 claim, but that claim is unimpaired.

I.       **Implementation of the Plan – 11 U.S.C. § 1123(a)(5)**. Article 7 of the Plan provides adequate means for the Plan's implementation. All payments as provided for in the Plan shall be funded by Debtor's cash on hand and operating income, unless otherwise stated.

J.       **Non-Voting Equity Securities/Allocation of Voting Power – 11 U.S.C. § 1123(a)(6)**. The Allowed Equity Interests in the Debtor are retained under the Plan. All equity holders of the Debtor which existed as of the Petition Date will continue to retain their same percentage ownership interests in the Reorganized Debtor.

K.       **Interests of the Creditors, Equity Security Holders, & Public Policy – 11 U.S.C. § 1123(a)(7)**. The Plan contains only provisions that are consistent with the interests of creditors and equity security holders and with public policy with respect to the manner of selection of any officer, director, or trustee under the Plan and any successor to such officer, director, or trustee.

L.       **Assumption & Rejection – 11 U.S.C. § 1123(b)(2)**. Article 6 of the Plan, pursuant to § 365 of the Bankruptcy Code, provides for the assumption, rejection, or assignment of any executory contract or unexpired lease of the Debtor not previously rejected under such section.

1.  Software licenses between the Debtor and Oracle are deemed rejected no later than the Plan's Effective Date (referred to herein as the "Effective Date")[3].

2.  The lease with Freeman Brothers Properties LLC of commercial real property for the main business premises located at 518 NE 190th St., 520 NE 190th St., 521 NE 189th St., 522 NE 190th St., 523 NE 189th St., 525 NE 189th St., and 527 NE 189th St., all located in Miami, FL 33179 is hereby assumed.

---

[3] Capitalized terms not described herein shall have the meanings assigned to them in the Plan.

M.  **Additional Plan Provisions – 11 U.S.C. § 1123(b)(6)**. Each of the provisions of the Plan is appropriate and not inconsistent with the applicable provisions of the Bankruptcy Code.

N.  **Principal Purpose of the Plan – 11 U.S.C. § 1129(d)**. The principal purpose of the plan is not the avoidance of taxes nor the avoidance of the application of section 5 of the Securities Act of 1933.

O.  **Subchapter V Plan Requirements – 11 U.S.C. § 1189**. The Plan complies with § 1189 because it was filed by the Debtor not later than 90 days after the order for relief under Chapter 11.

P.  **Contents of the Subchapter V Plan – 11 U.S.C. § 1190**. In compliance with § 1190, the Plan includes: (1) a brief history of the business operations of the Debtor, (2) a liquidation analysis, and (3) projections with respect to the ability of the Debtor to make payments under the Plan.

Q.  **Satisfaction of Conditions – 11 U.S.C. § 1191(b)**. The Court finds that, notwithstanding 11 U.S.C. § 510(a), the Plan (1) satisfies the applicable requirements of 11 U.S.C. § 1129(a), and (2) does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the Plan. As a result, the Plan is confirmed under § 1191(b). With respect to the applicable provisions of § 1129(a), the Court finds and concludes as follows:

1.  **11 U.S.C. § 1129(a)(1) and (a)(2)**. The Plan and the Plan Proponent comply with the applicable provisions of the Bankruptcy Code.

2.  **11 U.S.C. § 1129(a)(3)**. The Plan was proposed in good faith and not by any means forbidden by law.

3.  **11 U.S.C. § 1129(a)(4)**. Any payment made or to be made by the

Debtor, for services or for costs and expenses in or in connection with the case, or in connection with the Plan and incident to the case, has been approved by, or is subject to the approval of, the Court as reasonable.

4.      **11 U.S.C. § 1129(a)(5)**. The Plan has disclosed the identity and affiliations of any individual proposed to serve, after confirmation of the plan, as a director, officer, or voting trustee of the Debtor; and the appointment to, or continuance in, such office of such individual, is consistent with the interests of creditors and equity security holders, and with public policy; and the Plan Proponent has disclosed the identity of any insider that will be employed or retained by the Reorganized Debtor, and the nature of any compensation for such insider.

5.      **11 U.S.C. § 1129(a)(6)**. [11 U.S.C. § 1129(a)(6) is not applicable to this Debtor.]

6.      **11 U.S.C. 1129(a)(7)**. The Plan provides that, with respect to each impaired class of claims or interests, each holder of a claim or interest of such class has accepted the plan, or will receive or retain under the plan on account of such claim or interest property of a value, as of the Effective Date, that is not less than the amount that such holder would so receive or retain if the Debtor were liquidated under chapter 7 of this title on such date, or each holder of a claim of such class will receive or retain under the plan on account of such claim property of a value, as of the Effective Date, that is not less than the value of such holder's interest in the estate's interest in the property that secures such claims in compliance with 11 U.S.C. § 1111(b)(2).

7.      **11 U.S.C. § 1129(a)(9)**. Except to the extent that the holder of a particular claim has agreed to a different treatment of such claim, the Plan provides

that:

With respect to a claim of a kind specified in 11 U.S.C. § 507(a)(8), the holder of such claim will receive on account of such claim regular installment payments in cash of a total value, as of the Effective Date, equal to the allowed amount of such claim, over a period ending not later than 5 years after the date of the order for relief. More specifically, Priority tax claims are assessed, unsecured income, employment, and other taxes as described by Section 507(a)(8) of the Bankruptcy Code. The Debtor estimates the total Allowed Priority Tax Claims are the following: $14,428.75 to Miami Dade County Tax Collector; $444.94 to Florida Department of Revenue; and $0.00 to the Internal Revenue Service. In addition, Focustar Capital Group LLC c/o James Felds will be paid $9,670.00 as an allowed priority claim under section 507(a)(4).

Allowed Priority Tax Claimholders shall receive deferred cash payments over a period not to exceed five (5) years from the Petition Date, of a value, as of the Effective Date, equal to the amount of the Allowed Priority Tax Claim, plus statutory interest. If applicable, Debtor shall make these payments monthly, commencing on the Initial Payment Date. The Focustar claim shall be paid $1,934.00 per year for the first 3 years of the Plan, commencing on the Initial Payment Date (with subsequent payments made on the same month and day) with the balance of $3,868.00 to be paid in Year 4.

8.      **11 U.S.C. § 1129(a)(11)**. Confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor under the Plan.

9.      **11 U.S.C. § 1129(a)(12)**. All fees payable under 28 U.S.C. § 1930, as

determined by the Court at the Hearing, have been paid, or the Plan provides for the payment of all such fees on the Effective Date.

R.    **The Plan is Fair and Equitable – 11 U.S.C. § 1191(c)**.

    1.    With respect to the secured claims in Classes 1-9, the Plan meets the requirements of 11 U.S.C. § 1129(b)(2)(A).

    2.    As of the Effective Date, the Plan provides that all of the projected disposable income of the Debtor to be received in the 3-year period, beginning on the date that the first payment is due under the Plan, will be applied to make payments under the Plan.

    3.    The Debtor will be able to make all payments under the Plan, and the Plan provides appropriate remedies, which are described in detail in Article 7 of the Plan, and modified herein.

Accordingly, the Court **ORDERS**:

1.    **Confirmation**. The Plan is CONFIRMED under 11 U.S.C. § 1191(b).

2.    **Objections**. The USCB Objection is OVERRULED.

3.    **Binding Effect of Plan**. Pursuant to 11 U.S.C. § 1141(a), except as provided in § 1141(d)(2) and (3), the provisions of the Plan, as of the Effective Date, bind the Debtor and any creditor, equity security holder, or general partner in the Debtor, whether or not the claim or interest of such creditor, equity security holder, or general partner is impaired under the Plan and whether or not such creditor, equity security holder, or general partner has accepted the Plan.

4.    **Treatment of claims and interests**.

    a.    Class 1. As to the USCB claim relating to the SBA 7A Loan, the Debtor shall pay the Class 1 Claimholder the sum of $1,958,693.33 plus

postpetition interest and fees[4], less amounts paid prior to the Effective Date, re-amortized over a period of 10 years, at an annual fixed interest rate of 8%, for a monthly payment of $23,764.35, commencing on the Initial Payment Date. In addition, any and all Allowed 506(b) claims for accrued and unpaid postpetition fees, expenses, and interest, as one lump sum, will balloon at the end of year 10. The Class 1 Claimholder shall retain its liens in the same validity, extent, and priority as those that existed as of the Petition Date; specifically, this Claimholder shall retain its 1st position lien on the Debtor's assets, including but not limited to, its accounts receivable, plus all other collateral subject to the original loan documents. Until USCB's claims are paid in full, Debtor shall not borrow funds such that debt to other lenders is above a total cap of $2 million and shall not borrow funds with an interest rate greater than 10%. In addition, Debtor must provide a balance sheet and income statement each month no later than the 15th of the following month. Except as specifically amended by this Plan: (1) the prepetition loan documents shall remain in full force in all respects and are not modified in any way by the Plan, and (2) Debtor's covenants and obligations under the pre-petition loan documents will continue unchanged.

   b.  <u>Class 2</u>. As the USCB/SBA 504 loan where both Debtor and 1395 LLC are the borrowers, and which is secured by a mortgage on the 1395 Property, the prepetition loan documents are not modified in any way by the

---

[4] Since the Petition Date, interest has accrued on the Class 1 Claim in the amount of $196,529.60 as of November 20, 2023, with a per diem of $568.51. Interest at the Plan interest rate shall not accrue as to the postpetition attorneys' fees and the postpetition interest.

Plan.[5] The Debtor's obligations under the prepetition loan documents will continue unchanged post-Confirmation. There will be no prepayment penalty in the event the Debtor pays all or a portion of the unpaid principal balance before the maturity date. Except as modified in the Plan, the remaining terms of the prepetition loan documents will remain unchanged. The appraisal fee of $2,500 and appraisal review fee of $500.00 will be added to the Class 2 claim.

      c.      <u>Class 3</u>. Class 3 is the Allowed Secured Claim of LEAF relating to a Business Funding Agreement executed by the Debtor on June 30, 2022. The Debtor shall pay the Class 3 Claimholder the sum of $116,303.16 less amounts paid prior to the Effective Date, re-amortized over a period of 36 months, at an annual fixed interest rate of 8%, for a monthly payment of $3,644.52, commencing on the Initial Payment Date. These payments shall be in full satisfaction, settlement, release, and extinguishment of LEAF's Secured Claim relating to the Business Funding Agreement. In addition, the Class 3 Claimholder shall retain its liens in the same validity, extent, and priority as those that existed as of the Petition Date; specifically, this Claimholder shall retain its 2nd position lien on the Debtor's assets, including but not limited to, its accounts receivable, plus all other collateral subject to the original loan documents referenced in section (a) in this Class. Footnote 8 on page 25 of the Plan is hereby amended to read, "Although the Business Funding Agreement does not specify any interest rate terms, Debtor would be paying $27,795.76 on

---

[5] There is also a 2nd mortgage on the 1395 Property held by the SBA in the approximate amount of $1,495,341.42. Nothing in the Plan shall change or impair the SBA's lien rights, and the Renewal Note as contained in POC 31 shall not be modified in any way by the Plan. The SBA shall retain its liens in the same validity, extent, and priority as those that existed as of the Petition Date.

top of the funded amount upon the maturity date of the Agreement. Such amount is equivalent to an interest rate of approximately 15.99%, fully amortized, over 24 months." There will be no prepayment penalty in the event Debtor pays all or a portion of the unpaid principal balance before the maturity date. As long as the Class 3 Plan payments remain current, the Claimholder will not pursue payment from any guarantor and shall report to Experian, within 90 days of the Effective Date, that this loan is current. Within 60 days of the Effective Date, the Claimholder shall commence the sending of monthly statements directly to Reorganized Debtor that reflect the restructured unpaid balance amount as well as the adjusted interest rate.

d.    Class 4. As of the Petition Date, the Debtor was indebted to LEAF in the amount of $413,021.99 relating to a financing agreement for a 300 Kilo Roaster Probat. The total initial payback amount to LEAF by the Debtor was $479,638.44. The UCC-1 Financing Statement number referenced on page 27 of the Plan is hereby amended to state No. 20225511787. Footnote 9, located on page 27 of the Plan, is hereby amended to state: "Although the Finance Agreement omits any reference to interest rate terms, Debtor would be paying $83,936.44 on top of the principal amount upon the maturity date of the loan. Such amount is equivalent to an interest rate of approximately 12.95%, fully amortized, over 24 months." Debtor shall pay the Class 4 Claimholder the sum of $355,000.00, less amounts paid prior to the Effective Date, over 3 years without interest, for a monthly payment of $9,861.12, commencing on the Initial Payment Date. To account for the unpaid interest plus $5,000 for attorney's fees for the Claimholder, the Debtor will pay an additional $25,000 to LEAF as a balloon payment at the end of Year 3. These payments shall be

in full satisfaction, settlement, release, and extinguishment of LEAF's Secured Claim relating to the Kilo Roaster. There will be no prepayment penalty in the event Debtor pays all or a portion of the unpaid principal balance before the maturity date. In the event that the Debtor sells the Kilo Roaster within 2 years of the Effective Date, the net proceeds, after all closing costs and expenses are deducted, will be split 50/50 between the Debtor and the Claimholder. As long as the Class 4 Plan payments remain current, the Claimholder will not pursue payment from any guarantor and shall report to Experian, within 90 days of the Effective Date, that this loan is current. Within 60 days of the Effective Date, the Claimholder shall commence the sending of monthly statements directly to Reorganized Debtor that reflect the restructured unpaid balance amount as well as the adjusted interest rate. Nothing herein shall be deemed to release LEAF and Darron Burke's rights and remedies under a certain personal guaranty between LEAF and Darron Burke dated June 30, 2022 (the "Coffee Roaster LEAF Guaranty"). In conjunction therewith and for clarity, Darron Burke's obligations and liabilities under the Coffee Roaster LEAF Guaranty shall (i) remain in the full amount less any payments made to LEAF on its Allowed Class 4 Claim under this Plan and applicable agreements; and (ii) be paid upon the earlier of (a) any default with respect to LEAF under this Plan or the applicable LEAF agreements, or (b) the date of the final installment of LEAF's Class 4 Claim.

e.      Class 5. By agreement of the Debtor and Channel Partners, Debtor shall pay Channel Partners the sum of $55,000.00, less amounts paid prior to the Effective Date of the Plan, re-amortized over three years at an annual fixed interest rate of 8%, for a monthly payment of $1,723.50,

commencing on the Initial Payment Date. The remaining claim amount of $106,007.59 will be treated as a Class 10 general unsecured claim. These payments shall be in full satisfaction, settlement, release, and extinguishment of Channel Partners' Secured Claim. There will be no prepayment penalty in the event Debtor pays all or a portion of the unpaid principal balance before the maturity date. As long as the Class 5 Plan payments remain current, the Claimholder will not pursue payment from any guarantor, and shall report to the three credit bureaus, within 90 days of the Effective Date, that this loan is current. Within 60 days of the Effective Date, the Claimholder shall commence the sending of monthly statements directly to the Reorganized Debtor that reflect the restructured unpaid balance amount as well as the adjusted interest rate.

      f.    <u>Class 6</u>. Rapid Finance's Secured Claim shall be bifurcated into an Allowed Secured Claim in the amount of $107,632.00 with an Allowed General Unsecured Claim in the amount of $200.00. The Allowed Secured Claim shall be paid over 24 months in equal monthly payments, with no interest, commencing in January 2024. The monthly payments will be $4,484.67. Rapid Finance's Secured Claim will have a 3rd position priority on the Debtor's account receivable as collateral. By agreement of the parties, the personal guarantees against the guarantors shall not be enforced unless and until the payments are not completed by January 1, 2026. These payments shall be in full satisfaction, settlement, release, and extinguishment of any claim of Rapid Finance related to the Debtor. The Adversary Complaint as it relates to Rapid Finance shall be dismissed. There will be no prepayment penalty in the event the Debtor pays all or a portion of the unpaid principal

balance before the maturity date. Upon completion of the payments under the Plan to Rapid Finance, Rapid Finance shall fully release all guarantors relating to any of its claims against Debtor. By agreement of the Debtor and Rapid Finance, and per the *Order Granting Motion to Approve Settlement Agreement and Mutual Release Between Burke Brands, LLC and Small Business Finance Solutions, LLC d/b/a Rapid Finance* [ECF 272], as long as the Class 6 Plan payments remain current, the Claimholder will not pursue payment from any guarantor and shall report to the three credit bureaus, within 90 days of the Effective Date, that this loan is current. Within 60 days of the Effective Date, the Claimholder shall commence the sending of monthly statements directly to Reorganized Debtor that reflect the restructured unpaid balance amount as well as the adjusted interest rate.

g.    Class 7. Cloudfund's Secured Claim shall be bifurcated into an Allowed Secured Claim in the amount of $26,605.00 with an Allowed General Unsecured Claim in the amount of $100.00. The Allowed Secured Claim shall be paid over five months in equal monthly payments, with no interest, commencing in January 2024. The monthly payments will be $5,321.00. Cloudfund's Secured Claim will have a 4th position priority on the Debtor's accounts receivable as collateral. By agreement of the parties, the personal guarantees against the guarantors shall not be enforced unless and until the payments are not completed by June 1, 2024. These payments shall be in full satisfaction, settlement, release, and extinguishment of any claim of Cloudfund related to the Debtor. The Adversary Complaint as it relates to Cloudfund shall be dismissed. There will be no prepayment penalty in the event Debtor pays all or a portion of the unpaid principal balance before the

maturity date. Upon completion of the payments under the Plan to Cloudfund, Cloudfund shall fully release all guarantors relating to any of its claims against Debtor. By agreement of the Debtor and Cloudfund, and per the *Order Granting Motion to Approve Settlement Agreement and Mutual Release Between Burke Brands, LLC and Delta Bridge Capital Funding LLC d/b/a Cloudfund LLC* [ECF 273], as long as the Class 7 Plan payments remain current, the Claimholder will not pursue payment from any guarantor, and shall report to the three credit bureaus, within 90 days of the Effective Date, that this loan is current. Within 60 days of the Effective Date, the Claimholder shall commence the sending of monthly statements directly to the Reorganized Debtor that reflect the restructured unpaid balance amount as well as the adjusted interest rate.

      h.    <u>Class 8</u>. Velocity's claim shall be allowed in the amount of $740,700.00, bifurcated into an Allowed Secured Claim in the amount of $427,700.00 without interest, and an Allowed General Unsecured Claim in the amount of $313,000.00. Commencing 90 days after the Effective Date, the Debtor shall pay the Class 8 Claimholder $8,000.00 per month for 6 months (for a total of $48,000.00) followed by payments of $15,821.00 per month for 24 months (for a total of $379,704.00) on account of its Allowed Secured Claim. Velocity's Secured Claim shall have a 6th position priority on the Debtor's accounts receivable as collateral. The Adversary Complaint as it relates to Velocity shall be dismissed. There will be no prepayment penalty in the event Debtor pays all or a portion of the unpaid principal balance before the maturity date. By agreement of the parties, upon completion of the payments under the Plan to Velocity, Velocity shall fully release all guarantors relating to any of

its claims against Debtor. By agreement of the Debtor and Velocity, and per the *Order Granting Motion to Approve Settlement Agreement and Mutual Release Between Burke Brands, LLC and Velocity Capital Group, LLC* [ECF 275], as long as the Class 8 Plan payments remain current, the Claimholder will not pursue payment from any guarantor, and shall report to the three credit bureaus, within 90 days of the Effective Date, that this loan is current. Within 60 days of the Effective Date, the Claimholder shall commence the sending of monthly statements directly to the Reorganized Debtor that reflect the restructured unpaid balance amount as well as the adjusted interest rate.

      i.    <u>Class 9</u>. Winn's claim shall be allowed in the amount of $315,000.00, bifurcated into an Allowed Secured Claim of $230,400 without interest, and an Allowed General Unsecured Claim in the amount of $84,600.00. Commencing 90 days after the Effective Date, the Debtor shall pay the Class 9 Claimholder $6,000.00 per month for 6 months (for a total of $36,000.00) followed by payments of $10,800.00 per month for 18 months (for a total of $194,400.00) on account of its Allowed Secured Claim. Winn's Secured Claim will have a 5th position priority on the Debtor's accounts receivable as collateral. The Adversary Complaint as it relates to Winn shall be dismissed. There will be no prepayment penalty in the event Debtor pays all or a portion of the unpaid principal balance before the maturity date. Upon completion of the payments under the Plan to Winn, Winn shall fully release all guarantors relating to any of its claims against Debtor. By agreement of the Debtor and Winn, and per the *Order Granting Motion to Approve Settlement Agreement and Mutual Release Between Burke Brands, LLC and Winn Capital, LLC* [ECF 274], as long as the Class 9 Plan payments remain current, the Claimholder

will not pursue payment from any guarantor and shall report to the three credit bureaus, within 90 days of the Effective Date, that this loan is current. Within 60 days of the Effective Date, the Claimholder shall commence the sending of monthly statements directly to the Reorganized Debtor that reflect the restructured unpaid balance amount as well as the adjusted interest rate.

      j.    <u>Class 10</u>. Commencing January 2024 or on the Initial Payment Date, whichever is later, payments of $100,000.00 shall be distributed *pro rata* on an annual basis for two years followed by a distribution of $200,000.00 in Year 3, for a total payout of $400,000.00 (the "Total GUC Payout"). These payments shall be in full satisfaction, settlement, release, and extinguishment of their respective Allowed Claims. The Debtor may prepay any or all of the distributions described herein with no prepayment penalty. Once the Total GUC Payout is complete; i.e., the Debtor has paid $400,000 to Class 10 claimants pro rata, the Debtor will then be eligible for its discharge and final decree, regardless if the Total GUC Payout is completed earlier than 3 years from the Effective Date.

      <u>Euler Hermes N.A. Insurance Co.</u> Included in the Class 10 Claims are the claims of Euler Hermes N.A. Insurance Co. ("Euler"). The Court, having reviewed the record, having heard the presentation of Debtor's counsel, having determined that Debtor's notice to Euler as to its treatment under the Plan as being sufficient, having noted Euler's failure to file a separate request for administrative expense, and finding that Euler lacks standing to assert a claim under 11 U.S.C. §503(b)(9) has determined that claims 8 and 12 shall be allowed in their full

amount as general unsecured claims only, with no allowed administrative expense.

5. **Administrative Expenses**.

a. <u>Wernick Law, PLLC, Attorneys for the Debtor ("WL").</u> Fee total = $305,161.30 [final fee app] plus approximately $22,000 in supplemental fees [to be filed as a supplement] for an approximate total of $<u>327,161.30</u>. During the case, there was an interim fees/expense award of $197,688.71, with $192,253.00 actually paid to WL. In addition, WL is holding $31,250.00 in trust. The current balance owed to WL, therefore, is $103,658.30. [$327,161.30 minus $192,253.00 minus $31,250.00 equals $103,658.30.] WL has been paid $223,503.00 (interim fees plus trust balance), which is 68% of the total fees owed.

b. <u>Linda Leali, Esq., Subchapter V Trustee for the Debtor</u>. Fee total = $53,595.00. An interim award of $11,835.00 was paid by Debtor on 7/3/23. Balance owed is therefore $<u>41,760.00</u>.

c. <u>GGG Partners, Financial Advisor to the Debtor</u>. $164,440.00. $10,000 retainer and $62,500 in trust. Balance owed = $91,940.00.

d. <u>Brian Baker, CPA, Accountant to the Debtor</u>. $6,000.00

e. <u>Subchapter V Trustee Linda Leali, Esq.</u> will be paid first, before any other professionals are paid any further amounts, until she is paid $24,609.60 (which is 68% of the balance of her fees). Once Ms. Leali is paid $24,609.60, then all professionals (WL, GGG, Mr. Baker, and Ms. Leali) will be paid their outstanding balances on a pari passu basis.

f. Oracle Credit Corporation and Oracle America, Inc., successor in interest to NetSuite, Inc. (jointly, "Oracle") shall be paid a total of $10,000 (the "Oracle Settlement Amount") on account of its agreed-upon administrative expense

claim. The Debtor will pay the Oracle Settlement Amount in six (6) equal monthly installments of $1,666.67 commencing on the Initial Payment Date.

6.     **Re-vesting of Property**. Under 11 U.S.C. § 1141(b), except as otherwise provided in the Plan or in this Confirmation Order, as of the Effective Date, all of the property of the estate vests in the Debtor. Except as provided in §§ 1141(d)(2) and (3) and except as otherwise provided in the Plan or in this Order, after confirmation of the Plan, the property dealt with by the Plan is free and clear of all claims and interests of creditors, equity security holders, and of general partners in the Debtor.

7.     **Post-Confirmation Operation of Business**. Except as otherwise provided in the Plan or in this Confirmation Order, on and after the Effective Date, the Debtor may operate its business and may use, acquire, and dispose of property free of any restrictions of the Bankruptcy Code and Bankruptcy Rules and in all respects as if there were no pending case under any chapter or provisions of the Bankruptcy Code. The Debtor is entitled to retain and compensate professionals without the necessity of further approval of this Court. Except as set forth in the Plan concerning objections to claims, the Debtor may also settle or compromise any claims without Court approval.

8.     **Remedies in a Non-Consensual Plan and Events of Default**. If the Debtor fails to make any payment, or to perform any other obligation under the Confirmed Plan, any member of an affected class may serve upon the Debtor and the Debtor's counsel a written notice of default in the manner set forth in the "Notices" section herein. If the Debtor fails to cure the default, to obtain an extension of time to cure the default, or to file a motion with the Court for a determination that no default has occurred, within thirty days after the date of service of the notice of default, the Debtor is in material breach under the Plan. Upon material breach, any member of an affected class may seek (a) appointment of a receiver and the Debtor will agree to such appointment, or (b) seek removal of the Debtor and appointment

of a trustee under 11 U.S.C. § 1185(a), to which the Debtor also consents. Exclusive jurisdiction to enforce all defaults under the Plan shall be in the state courts in and for Miami-Dade County, Florida as well as this Court.

9.    **Injunction and Discharge**. Because the Plan is confirmed under section 1191(b), and pursuant to 11 U.S.C. § 1192, as soon as practicable after completion by the Debtor of all payments due within the first 3 years of the Plan or such longer period not to exceed 5 years as the Court may fix, the Court shall grant the Debtor a discharge of all debts provided in 11 U.S.C. § 1141(d)(1)(A), and all other debts allowed under 11 U.S.C. § 503 and provided for in the Plan, except any debt: (1) on which the last payment is due after the first 3 years of the plan, or such other time not to exceed 5 years fixed by the Court; or (2) of the kind specified in 11 U.S.C. § 523(a). To the extent the discharge provisions set forth in Article 9 of the Plan are inconsistent with this Confirmation Order, 11 U.S.C. § 1141(d), or any other provision of the Bankruptcy Code, this Order, 11 U.S.C. § 1141(d), 11 U.S.C. § 1192, and the Bankruptcy Code shall control.

10.    **Disbursing Agent**. The Debtor shall be the disbursing agent and make all payments under the Plan.

11.    **United States Trustee Guidelines**. The Debtor must comply with the guidelines set forth by the Office of the United States Trustee until the closing of this case by the issuance of a Final Decree by the Bankruptcy Court.

12.    **Effect of Confirmation Order on Plan**. The failure to reference or address all or part of any particular provision of the Plan herein has no effect on the validity, binding effect, or enforceability of such provision, and such provision has the same validity, binding effect, and enforceability as every other provision of the Plan. To the extent that any inconsistencies exist between the terms of the Plan and this Confirmation Order, the terms of this Confirmation Order shall control.

13. **<u>Documents Required to Effectuate Plan</u>**. The Debtor is authorized to execute any and all documents reasonably required to effectuate the provisions of the Plan or prior Orders of this Court.

14. **<u>Modification After Confirmation</u>**. Under 11 U.S.C. § 1193(c), the Debtor may modify the Plan at any time within 3 years or such longer time not to exceed 5 years, as fixed by the Court, but may not modify the Plan so that the Plan as modified fails to meet the requirements of 11 U.S.C. § 1191(b). The Plan as modified becomes the Plan only if circumstances warrant such modification and the Court, after notice and a hearing, confirms such plan, as modified, under 11 U.S.C. § 1191(b).

15. **<u>Discharge of the Subchapter V Trustee</u>**. As this Plan is being confirmed pursuant to 11 U.S.C. Section 1191(b), the Subchapter V Trustee shall be discharged after all (a) "Plan Payments" (i.e., administrative, priority, and Class 10 payments) have been made. Prior to the discharge of the Subchapter V Trustee, the Subchapter V Trustee shall comply with 11 U.S.C. § 1194, except as modified by this Order. The Debtor shall seek a discharge of the Subchapter V Trustee contemporaneously with a Motion for Final Decree upon completion of the Plan Payments.

16. **<u>Jurisdiction</u>**. The Bankruptcy Court retains jurisdiction to:

a. Resolve issues with respect to the Debtor's substantial consummation of the Plan and to the extent the Debtor seeks to amend or modify the Plan;

b. Resolve any motions, adversary proceedings, or contested matters, that are pending as of the date of substantial consummation;

c. Adjudicate objections to claims;

d. Resolve disputes with respect to any and all injunctions created as a result of confirmation of the Plan;

e. Adjudicate modifications of the Plan under 11 U.S.C. § 1193;

    f.      Review and consider issues associated with the Debtor's final report and entry of final decree, and to enter a final decree; and

    g.      Enter such orders as the Court deems necessary or appropriate with respect to enforcement of the Plan.

# # #

Submitted by:

Aaron A. Wernick, Esq.
Wernick Law, PLLC
*Attorneys for the Debtor*
2255 Glades Road, Suite 324A
Boca Raton, FL 33431
(561) 961-0922
awernick@wernicklaw.com

*Aaron A. Wernick, Esq. is directed to serve a copy of this Order on all parties and file a Certificate of Service within five (5) days of the entry of this Order.*